**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Spruce Street Properties LTD | : | Case No.: 2:24-cv-00544 |
| 33 N. Third Street | : | |
| Columbus, Ohio 43215 | : | **JURY TRIAL DEMANDED** |
|     and | : | |
| David W. Bishoff | : | |
| 33 N. Third Street | : | **COMPLAINT** |
| Columbus, Ohio 43215 | : | |
|     and | : | |
| E.V. Bishoff, Company | : | *FILED ON BEHALF OF PLAINTIFFS* |
| 33 N. Third Street | : | |
| Columbus, Ohio 43215 | : | |
|     and | : | |
| Duquesne General Partnership | : | |
| 33 N. Third Street | : | |
| Columbus, Ohio  43215 | : | |
|       *Plaintiffs* | : | |
|     vs. | : | |
| | : | |
| Carlyle Condominium Association | : | |
| 306 Fourth Ave. | : | |
| Pittsburgh, Pennsylvania 15222, | : | |
|     and | : | |
| David M. Belczyk, Esquire | : | |
| c/o Porter Wright Morris & Arthur, LLP | : | |
| 6 PPG Place, Third Floor | : | |
| Pittsburgh, Pennsylvania 19522, | : | |
|     and | : | |
| David I. Kelch, Esquire | : | |
| c/o Porter Wright Morris & Arthur, LLP | : | |
| 6 PPG Place, Third Floor | : | |
| Pittsburgh, Pennsylvania 19522 | : | |
|     and | : | |
| David Wolf, Esquire | : | |
| c/o Porter Wright Morris & Arthur, LLP | : | |
| 6 PPG Place, Third Floor | : | |
| Pittsburgh, Pennsylvania 19522 | : | |
|     and | : | |
| Scott Hare, Esquire | : | |
| 1806 Frick Building | : | |
| 437 Grant Street | : | |
| Pittsburgh, Pennsylvania  15219 | : | |
|     and | : | |

Nicholas Miller, Esquire          :
c/o Caputo Caputo & Regan, P.C.   :
The Buhl Building – 5th Floor     :
Pittsburgh, Pennsylvania 15222,   :
     and                       :
George R. Farneth, II, Esquire    :
The Farneth Law Group, LLC     :
845 Charles Street              :
Wellsburg, West Virginia 26070   :
            *Defendants.*        :

## **COMPLAINT**

Plaintiffs Spruce Street Properties LTD ("Spruce Street Properties," or "Plaintiff"), David Bishoff, E.V. Bishoff Co. and Duquesne General Partnership by its undersigned attorneys, Haines & Associates, hereby submits this Complaint and alleges as follows:

### PRELIMINARY STATEMENT

This action, asserting Counts for Abuse of Process and Wrongful Use of Civil Proceedings, arises from the initiation and prosecution of an underlying lawsuit against Spruce Street Properties and, among others, its partner David Bishoff, by the Carlyle Condominium Association and its attorneys, who are the named Defendants in this Action.

In the underlying lawsuit, *Carlyle Condominium Association v. Spruce Street Properties LTD, et al*., GD 14-014988 (Pa. C.P., Allegheny Co.) (the "Underlying Lawsuit"), Carlyle Condominium Association  asserted two distinct types of claims.  Although the primary focus of the underlying lawsuit involved a dispute over condominium fees, funds and assessments, Carlyle Condominium Association and its attorneys wrapped that dispute in accusations that Carlyle Condominium was defectively designed and constructed, ostensibly creating a danger to both residents and the public. Those accusations of defects constituted a ruse intended to bludgeon Spruce Street Properties and its partner into submission and extract millions of dollars from them.

Indeed, the Association and its attorneys went so far as to present falsified evidence at trial regarding so-called defects at the Carlye Condominium, by use of a "doctored" expert report.

At the conclusion of the two-week trial, the jury rejected Carlye Condominium Association's claims in the Underlying Lawsuit that were focused on the defects in the Carlye Condominium, finding in favor of Spruce Street Properties and its partner on those claims.   In the meantime, however, Spruce Street Properties had spent thousands of dollars preparing to defend the building against the claims of defects and prove the falsity of those claims.  The current Action by Spruce Street Properties constitutes an attempt to recover such losses.

## PARTIES

1.      Plaintiff Spruce Street Properties LTD is an Ohio Limited Partnership with a business address of  33 N. Third Street, Columbus, Ohio 43215.

2.      Plaintiff David W. Bishoff is an individual residing in Columbus Ohio with a business address of 33 N. Third Street, Columbus, Ohio 43215.

3.      Plaintiff E.V. Bishoff is an S-Corp organized and existing in the State of Ohio with a business address at 33 N. Third Street, Columbus, Ohio 43215.

4.      Duquesne General Partner is an LLC organized and existing under the laws of Ohio with a business address at 33 N. Third Street, Columbus, Ohio 43215

5.      Defendant Carlyle Condominium Association (the "Condominium Association") is an unincorporated association located at 306 Fourth Ave., Pittsburgh, Pa. 15222.

6.      Defendant David M. Belczyk, Esquire, is an individual and attorney at law, with an office located at GPPG Plaza, Third Floor, Pittsburgh, PA 15222.

7.      David I. Kelch is an individual and attorney at law with an office located at Porter Wright Morris & Arthur, LLC, 6 PPG Place, Third Floor, Pittsburgh, PA 15222.

8.      Defendant Scott Hare, Esquire, is an individual and attorney at law with an office located at 4 Stanwick Street, Suite 1400, Pittsburgh, PA 15232.

9.      Defendant Nicholas Miller, Esquire, is an individual and attorney at law residing in Pennsylvania with an office located at 607 College Street, Suite 101, Pittsburgh, PA 15232.

10.     Defendant David Wolf, Esquire is an individual and attorney at law residing in Pennsylvania with an office address of c/o Porter, Wright Morris & Arthur LLP, 6 PPG Place, Third Floor, Pittsburgh, Pennsylvania.

11.     Defendant George Farneth, II, Esquire, is an individual and attorney at law with an office address of 845 Charles Street, Wellsburg, WV 26070.

12.     At various times relevant to the issues in this case, the Condominium Association was represented by David Blaczyk, David Wolf, David I. Kelch, Scott Hare, Nicholas Miller and George Farneth, II.

13.     The term "Defendants," as used in this Complaint, refers collectively to   the Condominium Association, Belczyk, Hare and Miller.

14.     At all relevant times, Defendants each acted by and through their authorized agents, servants, and employees.

**JURISDICTION AND VENUE**

15.     The subject matter jurisdiction of this Court is based on  28 U.S.C. § 1332, since the parties are of diverse citizenship and the matter in controversy exceeds $75,0000.

16.     Spruce Street Properties  is a limited partnership located exclusively in the state of Ohio, and. all Defendants are located in Pennsylvania.

17.     Venue is proper in this federal jurisdiction because all relevant events referable to his claim occurred in this district, in Pittsburgh, Pennsylvania.

## STATEMENT OF FACTS

18.     Spruce Street Properties is a real estate developer who acquires real estate for the purpose of creating a new use for land or building.

19.     Spruce Street Properties is not a building or construction company.

20.     Spruce Street Properties engages other businesses to design, engineer and manage the actual construction of the project.

21.     A construction contractor in turn engages plumbers, electricians, carpenters and other trades to execute on design and engineering documents.

22.     In or about 1997, Spruce Street  Properties purchased the landmark Union National Bank Building located at 300-306 Fourth Ave, Pittsburgh, Pennsylvania.

23.     In or about 2006, Spruce Street Properties began a restoration project to convert the building into residential units, which would be sold as condominiums in accordance with existing statutory law in Pennsylvania.

24.     In order to undertake this project, Spruce Street Properties hired architects, engineers, and experts in rehabilitation construction to devise a design and plan that would comply with the requirements of then-existing regulations, codes, and building standards, and provide approximately sixty-one (61) luxury residences.

25.     This project and planned community were supported by banks and insurers necessary to finance and approve the project.

26.     Both before and during construction, all necessary permits, licenses, and approvals were obtained in order to comply with existing laws regarding residential construction in Allegheny County.

27.     Throughout the construction project, routine inspections by city and county authorities were obtained, publicly posted and available to potential investors or purchasers.

28.     As units were completed and ready for habilitation by cordiaminum buyers, certificates of occupancy were obtained.

29.     Similarly, the common areas (lobby, halls, elevators, stairwells and maintenance facilities) obtained certificates of occupancy.

30.     The building was named the "Carlyle".

31.     With the assistance of lawyers experienced in the area, legal documents were prepared to properly establish a Carlyle Condominium Association in accordance with Pennsylvania law.

32.     On or about May 20, 2009, a Declaration of Condominium for the Carlyle Condominium was executed, pursuant to the Pennsylvania Uniform Condominium Act, 68 Pa.C.S.A. § 3101, in the Allegheny County Department of Real Estate.

33.      Each of the condominium units was subject to mandatory disclosures as required by Pennsylvania Real Estate Statutes to any purchase. The entire building was open for inspection by professionals, attorneys, bank underwriters, home inspectors, appraiser, title companies, engaged in assisting buyers in obtaining mortgages and fully ensuring the quality of the condominium units they were purchasing,

34.     Common elements of the building were to be under the control of the Condominium Association and subject to the standard operating agreements associated with condominium

communities.  Such agreements provide for governance of the Association and define the duties and responsibilities of the individual  unit owners, and the condominium association, its officers and directors.

35.     Pursuant to the Pennsylvania Uniform Condominium Act and the adopted bylaws, the Condominium Association would have responsibility for and control of the care and maintenance of the Carlyle Condominium building and its common areas. The Condominium Association was not responsible for each unit.  Each owner was responsible for his or her unit.

36.      The affairs of the Condominium were to be conducted and governed through  the Condominium Association's three-person Executive Board, in accordance with the Carlyle Condominium's bylaws.

37 .    Until a majority of the Condominium's units  were owned by individual purchasers, the Condominium Association was to be run by Spruce Street Properties.

38.     Accordingly, the Condominium Association's Executive Board was initially chaired by David Bishoff, a partner of Spruce Street Properties,  until such time as a majority of the condominium units in the building were  purchased by private owners.

39.     Spruce Street Properties controlled the Executive Board, through Mr. Bishoff, until June 12, 2014.

40.     On or about June 12, 2014, control of the Condominium Association was turned over to the unit holders who in turn elected a new Executive Board.

41.     The  Condominium Association elected an Executive Board, consisting of Gary Graham, Jeff Eck, and Michael Sadowsky.

42.     Gary Graham, the newly installed President of the Condominium Association, shortly before he assumed office, immediately developed an adversarial relationship with David Bishoff.

43.   At one point, shortly before he assumed office, Graham called David Bishoff on the phone and stated: "I'm going to shake you down. I'm from Philadelphia, I know how to do it"

44.   Board members Graham, Sadowsky and Eck engaged the services of attorneys Nicholas Miller, Esquire, and Scott Hare, Esquire.

## THE LAWSUIT

45.   Unbeknownst to Bishoff or Spruce Street Properties, an adversarial relationship was being established by the Condominium Association Executive Board and its lawyers Hare & Miller.

26.   By summons dated August 25, 2014, the two attorneys commenced the Underlying Lawsuit in the Court of Common Pleas of Allegheny County against, among others, Spruce Street Properties and Mr. Bishoff.

37.   Thereafter, and on February 9, 2015, a Complaint was filed.

38.   A copy of the Condominium Association's complaint in the Underlying Lawsuit is attached hereto as Exhibit "A."

39.   The underlying complaint focused largely on issues of financial responsibility for various fees relating to the care and maintenance of the Carlyle Condominium building.

40.   However, Incorporated in the underlying complaint, was a claim asserting construction defects.

41.   In paragraph 63 of the underlying complaint, the Condominium Association identified over seventy-five (75) alleged "deficiencies" in the building.

42.   The deficiencies and other defects were never communicated to the builder, the property owner or any inspecting or certifying any entity.

43.    While unknown to Spruce Street Properties at the time, paragraph 63 consisted of a recitation of a prior report prepared by Atlantic Code Consultants in July 2014, which report provided to anyone until the discovery process began.

44.    After the filing of the Underlying Lawsuit in 2014 and through April 2022, discovery was conducted by way of interrogatories, requests for the production of documents and depositions

45.    The Condominium Association never conducted discovery of any code officer from Allegheny County, or any of the architects, engineers, and systems (*e.g.,* heating, air-conditioning and electrical) professionals that participated in the construction of the Carlyle Condominium building.

46.    At no time was any documentation provided reflecting support for the subparagraphs in the Complaint.

47.    The Condominium Association attorneys did not conduct any discovery from any worker, supervisor or principal of entity involved in the actual work done at the Carlyle.

48.    Similarly, the Condominium Association never notified any governmental agencies or public offices of the putative defects identified in the Atlantic Code Consultants report, some of which, if true, would have involved code violations.

49.    The  Condominium Association engaged no specialists in fire safety, heating and air conditioning, electrical circuitry or plumbing, to assess either the exact  nature of the problems identified by Atlantic Code Consultants, or to provide insight  into the cost of likely repairs.

50.    During the time between the 2014 preparation of the Atlantic Code Consultants report and the 2022 trial of the Underlying Lawsuit, the Condominium Association made no effort

to correct or remediate any of the so-called deficiencies identified by Atlantic Code Consultants, or to protect unit owners or the public from any allegedly dangerous conditions.

51.    The Condominium Association never solicited questions or bis to determine the cost to correct any of the deficiencies they alleged existed.

52.    The Condominium Board never sought an assessment to address any of those alleged deficiencies.

53.    Indeed, the Condominium Association never disclosed the report to all the Carlyle Condominium unit owners or their mortgage bankers or insurers.

## THE TRIAL

54.    In or about November of 2019, the Condominium Association, through their lawyers, produced an expert "report" from the Berkly Research Group.

55.    The report from the Berkley Research Group was prepared by Robert J. Lewis, Director of the Berkley Group.

56.    The report was authored by Lewis and contained information Lewis collected from subordinates and outside entities to include Atlantic Code Consultants.

57.    Lewis' report was dated November 22, 2019, and was based on his visual observations of the Carlyle Condominium in fall 2019, as well as the 2014 Atlantic Code Consultants report.

58.    Upon review of the 2014 Atlantic Code Consultants report by Plaintiff it was clear that the report would serve as the source for the supposed defects identified in the underlying complaint.

59.    Spruce Street Properties immediately focused on the most aspects of the report and engaged its own experts to address the different aspects of the defects that had been alleged,

despite the absence of any discovery other than the report of Lewis and at great expense to itself.

## THE TRIAL OF THE UNDERLYING LAWSUIT

60.     The Underlying Lawsuit went to trial on April 27, 2022, before the Honorable Christine Ward and a jury.

61.     The Condominium Association was represented at trial by David M. Belczyk, Esquire, David Kelch, Esquire and David Wolf, Esquire.

62.     Over the course of the presentation of its case, the Condominium Association called ten (10) witnesses to testify.

63.     The Condominium Association failed to call any of the design, engineering or construction experts who were involved in the rehabilitation of the building that was to become the Carlyle Condominium to testify.

64.     The Condominium Association relied primarily on Robert Lewis to testify regarding its claims that the Carlyle Condominium building was defectively designed.

65.     At the time Mr. Lewis was called to testify, more than eight (8) years had passed since the original  Atlantic Code Consultants "report" regarding construction defects was issued.

66.     Over the course of those eight (8) years, no steps had been taken by the Condominium Association to remediate any defect in the Carlyle as shown in the Atlantic Code or Lewis Report.

67.     From the date of the Atlantic Code Consultants report to the time of the trial of the underlying lawsuit, no citation or report of a fire or sprinkler violation at the Carlyle was ever issued by any governing authority under their rules, regulations or code.

68.    At the time of the trial of the Underlying Lawsuit and for seven (7) years prior, ,the Condominium Association set aside no funds, and made no assessments to members of the Association in order to address the putative defects.

69.    The focus of Mr. Lewis' expert testimony at trial was on his 2019 visual inspection of the Carlyle Condominium building.

70.    But for an onsite inspection done by Mr. Lewis in 2017, Lewis' courtroom expert testimony consisted entirely of opinion reached by others to include the Atlantic Code Consultants report.

71.    The cross-examination at trial of Mr. Lewis established that the copy of the Atlantic Code Consultants report that was presented to the Judge and jury had been significantly altered from the Bates-numbered version originally produced by the Condominium Association

72.    The Atlantic Code Consultants report presented at trial had been modified and manipulated to alter the very fact pattern of the Underlying Lawsuit.

73.    The original Bates-numbered Atlantic Code Consultants report contained a column labeled "Severity, "in which Atlantic Code Consultants had characterized their findings concerning certain alleged conditions or defects, identifying them as "minor," "moderate," or" major."

74.    The altered version of the Atlantic Code Consultants report presented at the underlying trial contained thirty-nine (39) separate severity entries that were altered from the original Bates-numbered version of the same report.  Those alterations changed findings of conditions identified with a lesser degree of severity to a "major" severity, thereby creating the illusion of serious construction deficiencies.

75.    According to Lewis, he pointed out these discrepancies between the different reports.

76.     Trial counsel, nonetheless, proceeded to present the altered report as affirmative evidence of defects in the building.

77.     The alteration of the Atlantic Code Consultants report constituted an intentional and fraudulent attempt to alter the facts of the Underlying Lawsuit.

78.     On the witness stand at trial, Mr. Lewis denied that he had altered the Atlantic Code Consultants report and suggested that he had brought the disparities between the two versions of the report to the attention of counsel for the Condominium Association, who took no steps to correct the problem.

79.     The Condominium Association and their attorneys proceeded to the end of the underlying trial, without ever addressing the misrepresentations in evidence they presented to the Court and jury.

80.     Their conduct in presenting the Atlantic Code Consultants "doctored" report constituted the subornation of perjured testimony.

81.     Their conduct in presenting perjured testimony was an egregious abuse of process.

82.     On April 20, 2022, the jury returned a verdict in favor of Spruce Street Properties on the defect issues, finding no evidence of defects and awarding no damages to the Condominium Association.

83.     In order to defend against a bogus claim asserting supposed defects in the Carlyle Condominium building, Spruce Street Properties was forced to spend over a million of dollars to retain experts and pay lawyers to defend a claim that never had any merit and was  brought  by the Condominium Association and its attorneys for an improper purpose.

84.     The  Condominium Association has not appealed the finding of the jury and the outcome with respect to two types of claims presented by the Association.

85.     The findings of the jury in favor of Spruce Street Properties resolved an independent theory of liability contained within the Underlying Lawsuit, and entitles Spruce Street Properties to pursue an action, under what is commonly known as the Pennsylvania "Dragonetti Act," alleging wrongful use of civil proceedings.

## DAMAGES

86.     As a result of the willful, malicious and intentional misconduct of the current Defendants, Spruce Street Properties has been forced to expend large sums of money to properly prepare for and rebut contentions that were finally proven false at the trial of the Underlying Action..

87.      In addition to incurring legal fees beyond those spent in addressing the current Defendants' other theories of liability in the Underlying Lawsuit, Spruce Street Properties was forced to hire expert witnesses to rebut the contentions of supposed construction defects at great expense.

89.     Six (6) of the Carlyle Condominium units remain unsold. Because of the misconduct of the current Defendants, Spruce Street Properties has suffered reputational harm, the full extent of which is not yet known.

## COUNT I
## ABUSE OF PROCESS
### (against all Defendants)

90.     Plaintiff hereby incorporates all preceding paragraphs, *supra,* as if fully stated here.

91.     The tort of abuse of process is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) (quotation omitted).

92.     Abuse of process occurs when the legal process is used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002).

93.     In pursuing the Underlying Lawsuit against Spruce Street Properties, the current Defendants sought to shift the burden of maintenance and the cost of ongoing repairs from the Condominium Association and owners  to the developer of the Carlyle Condominium.

94.     In order to enhance their claim with respect to more routine financial matters, the current Defendants used a list of minor deficiencies included as part of the  2014 Atlantic Code Consultants report to invent an additional underlying claim against Spruce Street Properties asserting defective construction of the Carlyle Condominium building.

95.     Even if untrue, to the extent that defective construction claim was litigated over time, it was likely to threaten the professional reputation of Spruce Street Properties.  In asserting the defective construction claim, the current Defendants sought to pressure and coerce Spruce Street Properties to settle the Association's other, remaining underlying claims, at the highest possible price.

96.     Realizing that the deficiencies asserted by the Condominium Association were not sufficient to make out a claim for construction defects, the current Defendants altered the 2014 Atlantic Code Consultants report to enhance their transparently weak construction defects claim.

97.     The current Defendants' attempt to deceive the Court and jury in the Underlying Lawsuit by using manufactured evidence constitutes a fundamental abuse of process.

98.     Spruce Street Properties suffered harm as a result of the improper conduct of the current Defendants.

99.     As a result of the current Defendants' conduct, in order to "meet" the construction defect claims asserted in the Underlying Lawsuit,  however weak, untrustworthy and improper as they were, Spruce Street Properties was compelled to expend money to pay for experts, witnesses, and counsel fees, which they seek to recover as damages in this action.

100.    The conduct of the current Defendants in the Underlying Lawsuit was willful, wanton, malicious and/or oppressive and was undertaken with the intent to harm Spruce Street Properties.  Such conduct justifies an award of punitive damages.

WHEREFORE, plaintiff  Spruce Street Properties LTD demands judgment on Count I in its favor and against Defendants, in an amount in excess of $50,000.00, together with pre and post judgment interest, punitive damages and such other and further relief as this Court or jury deems just and appropriate.

### COUNT II
### WRONGFUL USE OF CIVIL PROCEEDINGS:
### VIOLATION OF 42 Pa. C.S. § 8351, *et. seq.*
### (against all Defendants)

101.    Plaintiff hereby incorporates all preceding paragraphs, *supra,* as if fully stated here.

102.    Pennsylvania's wrongful use of civil proceeds statute, the Dragonetti Act, provides in relevant part:

§ 8351 WRONGFUL USE OF CIVIL PROCEEDINGS.

(a)     Elements of action.- A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: [if]

(1)     he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2)     the proceedings have terminated in favor of the person against whom they are brought.

16

42 Pa. C.S. § 8351.

103.   While concocting and continuing their transparently weak claim for construction defects in the Underlying Lawsuit, the current Defendants relied on a single expert witness who in turn, relied on a report prepared years before the expert's inspection of the premises, which the current Defendants significantly altered at the underlying trial, in an attempt to strengthen their case.

104.   The current Defendants' initiation and continuation of the construction defects claim, even to the improper alteration of evidence, was done in a grossly negligent manner and/or without probable cause, and primarily for an improper purpose.

105.   The current Defendants' misuse of civil proceedings in this fashion constitutes a violation of the Dragonetti Act.

106.   The proceeding with respect to the current Defendants' claim of defective construction was resolved by the jury's sound rejection of that claim. The jury found in favor of Spruce Street Properties on both counts associated with the defective construction claim.

107.   The jury's rejection of this severable claim serves as a finding in favor of Spruce Street Properties that satisfies the requirements of the Dragonetti Act.

108.   Spruce Street Properties suffered harm as a result of the improper conduct of the current Defendants in violation of the Dragonetti Act.

109.   As a result of the current Defendants' conduct, Spruce Street Properties was compelled to spend money to pay for experts, witnesses, and counsel fees, which they seek to recover as damages in this action.

110.    The conduct of the current Defendants in the Underlying Lawsuit was willful, wanton, malicious and/or oppressive and was undertaken with the intent to harm Spruce Street Properties.  Such conduct justifies an award of punitive damages.

WHEREFORE, plaintiff  Spruce Street Properties LTD demands judgment on Count II in its favor and against Defendants, in an amount in excess of $50,000.00, together with pre and post judgment interest, punitive damages and such other and further relief as this Court or jury deems just and appropriate.

## JURY TRIAL

Plaintiff, Spruce Street Properties LTD hereby demands a trial by jury.

Respectfully submitted,

**HAINES  & ASSOCIATES**

Dated:  April 10, 2024          By:      _/s/_        _Clifford E. Haines_
CLIFFORD E. HAINES
PA. Attorney I.D. No.: 09882
The Widener Bldg. – 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(p)     215-246-2200
(f)      215-246-2211
chaines@haines-law.com
*Attorneys for Plaintiffs, Spruce Street*
*Properties LTD, David W. Bishoff,*
*E.V. Bishoff Company and Duquesne*
*General Partnership*